UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| *Plaintiff,* | § § | EP-19-CR-01225-DCG-2 |
| v. | § § | |
| NOE ANDRES UGARTE, | § § | |
| *Defendant.* | § § | |

## ORDER

Presently before the Court is Defendant Noe Andres Ugarte's "Motion to Suppress Evidence" ("Motion") (ECF No. 74) filed on August 6, 2019. An evidentiary hearing on the motion was first scheduled on August 27, 2017. *See* ECF No. 84. On August 22, 2019, the Court reset the evidentiary hearing for September 4, 2019, and ordered Defendant and the United States to each separately file a supplemental brief addressing the issue of Fourth Amendment standing. *See* ECF No. 85. After Defendant failed to file his supplemental brief on the issue, the Court vacated the evidentiary hearing on September 3, 2019 and informed parties that Defendant's motion would be decided on the briefs submitted by the parties. *See* ECF No. 88. For the reasons that follow, the Court **DENIES** Defendant's Motion.

## I. BACKGROUND

On March 9, 2019, at approximately 9:39 p.m., U.S. Drug Enforcement Agency ("DEA") agents received information from a confidential source ("CS") that two individuals from Albuquerque, New Mexico would be delivering an undetermined amount of cash drug proceeds in El Paso, Texas. Mot. at 1; Resp. at 2 (ECF No. 83). The proceeds came from a previous sale of cocaine, in Albuquerque, New Mexico at the direction of Victor Manuel Ugarte-Romero ("V. Ugarte"), Defendant's brother. Resp. at 2. The CS was supposed to pick up the proceeds and

bring them to Defendant, who would then take them to V. Ugarte in Mexico. Mot. at 2; Resp. at 2.

As tasked by the investigating DEA agents, the CS picked up the proceeds from the two Albuquerque couriers. Mot. at 2; Resp. at 2. The CS then contacted Defendant and told him to meet him/her at a Circle K gas station, located at 1915 Montana Avenue in El Paso. Mot. at 2; Resp. at 2. At 11:53 p.m., Defendant and his wife entered the U.S. from Mexico via the Paso del Norte Port of Entry. Mot. at 2; Resp. at 2. Around the same time, the CS received a Whatsapp message from V. Ugarte that Defendant would be at the CS' location shortly. Mot. at 2.

On March 10, 2019, at approximately 12:30 a.m., the DEA agents observed Defendant's vehicle at the Circle K gas station. Mot. at 2; Resp. at 2. Defendant's vehicle—a gray Honda Civic—parked next to the CS' vehicle—a black Dodge Charger—at the parking lot. Mot. at 2; Resp. at 2. At the direction of the DEA agents, two El Paso Police Department officers approached the two vehicles and spoke with Defendant and the CS. Mot. at 3; Resp. at 3. As a ruse to protect the identity of the CS, the two officers told Defendant and the CS that "there were reports of suspicious activity in the area." Mot. at 3; Resp. at 2. The officers then asked for, and received, consent from Defendant and the CS to search both vehicles. Mot. at 3; Resp. at 2. The officers found $70,929.00 in U.S. currency in the back seat of the CS' Dodge Charger. Mot. at 3; Resp. at 2. Defendant, his spouse, and the CS were transported to the El Paso Police Department Central Headquarters at 200 S. Campbell Street. Mot. at 3; Resp. at 3.

Once at the station, Defendant was read his *Miranda* rights, which he subsequently waived. Mot. at 2; Resp. at 3. During the interview, Defendant confessed that he traveled to El Paso to pick up an undetermined amount of money for his brother, V. Ugarte, and admitted that the money was drug proceeds from the sale of cocaine and marijuana. Mot. at 3; Resp. at 3.

Defendant told law enforcement that his brother, V. Ugarte, was involved in the coordination and transportation of drugs and drug proceeds to and from different destinations within the United States. Resp. at 3. Defendant also told law enforcement that his brother, V. Ugarte, has previously paid him to deliver drug proceeds on multiple occasions. Resp. at 3.

On April 24, 2019, Defendant was indicted for Conspiracy to Possess with the Intent to Distribute a Controlled Substance, to wit: over 500 grams of cocaine, in violation of 21 U.S.C. § 846, and with Possession with the Intent to Distribute a Controlled Substance, to wit: over 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1). *See Indictment*, ECF No. 30. Defendant filed the instant Motion to Suppress on August 6, 2019 (ECF No. 74).

## II. STANDARD

"It is well established that the burdens of production and persuasion generally rest upon the movant in a suppression hearing." *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977). However, in certain situations, the burden of persuasion shifts to the government. *Id.* For example, "[w]hen the government searches or seizes a defendant without a warrant, the government bears the burden of proving, by a preponderance of the evidence, that the search or seizure was constitutional." *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001). Further, the government also bears the burden of proving that a confession obtained during custodial interrogation is admissible. *Taylor v. Alabama*, 457 U.S. 687, 690 (1982); *de la Fuente*, 548 F.2d at 533. However, in order to shift the burden to the government, the defendant must first discharge his initial burden of producing some evidence, based on specific factual allegations, sufficient to make a prima facie showing of illegality. *United States v. Lyons*, 31 F. App'x 833 (5th Cir. 2002).

## III. DISCUSSION

By his Motion, Defendant seeks to exclude all evidence derived and flowing from his allegedly illegal seizure. Mot. at 6–7. Defendant bases his Motion in the Fourth Amendment to the United States Constitution, *Bond v. United States*, 529 U.S. 334, 336 (2000) ("The Fourth Amendment provides that '[t]he right of the people to be free in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .'" (quoting U.S. Const. amend. IV)); and the exclusionary rule, *Segura v. United States*, 468 U.S. 796, 804 (1984) ("The suppression or exclusionary rule is a judicially prescribed remedial measure [that] . . . reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" (internal citations omitted)).[1]

In their initial briefs, Defendant and the United States primarily based their arguments on Fourth Amendment case law involving investigatory detentions and consensual interactions. But this case presents only one determinative question before the Court: does Defendant have a cognizable Fourth Amendment interest in the black Dodge Charger searched by the El Paso Police Department Officers? The Court concludes as a matter of law that he does not.

### A. Fourth Amendment Standing

Defendant seeks to suppress any evidence recovered after his encounter with the El Paso Police Department Officers. Defendant argues that any evidence recovered after the encounter is fruit of the poisonous tree because "he was illegally detained, his property and person seized and searched." Mot. at 3. Namely, Defendant seeks to suppress the drug proceeds amounting to

---

[1] Defendant appears to also argue that his motion is also based under the Sixth Amendment, *see* Mot. at 1, but Defendant does not assert any claim under the Sixth Amendment anywhere in his motion. Therefore, the Court does not reach any Sixth Amendment issues, if any.

$70,929.00 in U.S. currency.² Defendant's Motion to Suppress is unclear on where the officers located the drug proceeds, *see* Mot. at 3 ("The EPPD Officers located $70,929.00 in U.S. Currency."), but he does not dispute the United States' assertion that the officers found the proceeds "in the back seat of the [CS'] Dodge Charger." Resp. at 2.

The Supreme Court has long held that "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)). To challenge an alleged illegal search and seizure, a defendant must first establish "a cognizable Fourth Amendment interest" in the property searched and seized—also known as "Fourth Amendment standing." *Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018). In other words, the defendant must establish that he has "a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." *Smith v. Maryland*, 442 U.S. 735, 740 (1979).

The Supreme Court's two-part test to determine whether such an expectation of privacy exists involves asking "whether the defendant had exhibited a subjective expectation of privacy," and "whether society is prepared to recognize this subjective expectation as reasonable or legitimate." *Hudson v. Palmer*, 468 U.S. 517, 525 (1984) (citing *Katz v. United* States, 389 U.S. 347, 360–61 (1967) (Harlan, J. concurring)). The Fifth Circuit considers the following factors relevant to this analysis: (1) "whether the defendant had a possessory interest in the area searched;" (2) "whether the defendant had a right to exclude others from the area;" (3) "whether he exhibited a subjective expectation that it would remain free from governmental invasion;" (4)

---

² Defendant argues that "any statements [he] made" after the alleged Fourth Amendment violation should be suppressed because the statements were "fruit of the poisonous tree." *See* Mot. at 6–7. As such, the Court only addresses the alleged Fourth Amendment violation presented by Defendant.

"whether he took normal precautions to maintain his privacy;" and (5) "whether he was legitimately on the premises." *United States v. Hamilton*, 931 F.2d 1046, 1051 (5th Cir. 1991).

As such, a defendant generally does not have standing to challenge the introduction of incriminating evidence secured from a search of a third person's property. *See Rakas*, 439 U.S. at 133 (citing *Alderman*, 394 U.S. at 174); *see also United States v. Ramirez*, 117 F. App'x 901 (5th Cir. 2004) (finding that defendant lacked Fourth Amendment standing because he did not have a possessory interest in the vehicle searched, nor was he inside the vehicle when it was stopped); *United States v. Short*, 181 F.3d 620, 623 (5th Cir. 1999) (finding that defendant-passenger lacked Fourth Amendment standing to challenge the search of a vehicle because there was no indication that the incriminating evidence found was his or on his person); *United States v. Roberson*, 6 F.3d 1088, 1093 (5th Cir. 1982) (finding that defendant-passenger lacked Fourth Amendment standing to challenge the search of a vehicle's contents after the driver consented to search).

Here, the El Paso Police Department officers found the drug proceeds in the back of the CS' black Dodge Charger, not Defendant's gray Honda Civic. At no point did Defendant ever drive, occupy, or possess the Dodge Charger; nor did he have any property interest in it or exhibit a subject expectation that it would remain free from governmental invasion. *See Rakas*, 439 U.S. at 143 n. 12 ("Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. One of the main rights attaching to property is the right to exclude others, . . . and one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude."). Indeed, Defendant clearly lacks a Fourth Amendment interest in the

vehicle searched because whether Defendant gave his consent voluntarily or whether he was illegally detained is factually immaterial and causally unrelated, since but for the CS' consent, the officers would not have searched the Dodge Charger where the incriminating drug proceeds were located.

Therefore, the Court concludes that Defendant lacks Fourth Amendment standing to challenge the search because he does not have "a justifiable, a reasonable, or a legitimate expectation of privacy" in the vehicle searched—the CS' black Dodge Charger.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Defendant Noe Andres Ugarte's "Motion to Suppress and Incorporated Memorandum of Law" (ECF No. 74) is **DENIED**.

So ORDERED and SIGNED this 4th day of September 2019.

**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**